UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH ANDERSON III
and KIM ANDERSON,

        Plaintiffs,

          vs.

                                        Civil Action No.
                                        13-CV-12854

                                        HON. MARK A. GOLDSMITH

DEUTSCHE BANK NATIONAL TRUST
COMPANY, as TRUSTEE for SOUNDVIEW
HOME LOAN TRUST ASSET-BACKED
CERTIFICATES, SERIES 2006-2, et al.,

        Defendants.
_____/

## OPINION AND ORDER GRANTING MOTION TO DISMISS (DKT. 3)

### I.      INTRODUCTION

This case arises out of the foreclosure sale of Plaintiffs' property. Plaintiffs Joseph Anderson and Kim Anderson seek a stay of eviction pending compliance by Defendant Wells Fargo Bank, N.A. ("Wells Fargo") with consent orders issued by the Office of the Comptroller of the Currency ("OCC"). The matter is before the Court on Defendants' motion to dismiss (Dkt. 3), which is fully briefed. The Court conducted oral argument on January 9, 2014. For the reasons that follow, the Court grants the motion to dismiss.

### II.      BACKGROUND

On December 16, 2005, Plaintiffs Joseph Anderson and Kim Anderson received a loan from CTX Mortgage Company, LLC ("CTX"), secured by a mortgage they granted on their residence in Romulus, Michigan. See Note (Dkt. 3-2) and Mortgage (Dkt. 3-3). On September 3, 2009, CTX assigned the mortgage to Defendant Deutsche Bank National Trust Company, as

Trustee for Soundview Home Loan Trust Asset-Backed Certificates, Series 2006-2 ("Deutsche Bank").   Assignment (Dkt. 3-4).   Plaintiffs allege that America's Servicing Company, a subsidiary of Defendant Wells Fargo, serviced the mortgage.   Compl. at ¶¶ 10-11 (Dkt. 1). Plaintiffs defaulted on the mortgage loan, and the subject property was sold at a foreclosure sale on August 16, 2012.   Sheriff's Deed at 2, 4 (Dkt. 3-5).   The redemption period expired six months after the date of sale, on February 16, 2013.   Id. at 4.   The property was not redeemed.

In 2011, the OCC began enforcement actions against various financial institutions, including Wells Fargo, "for unsafe or unsound banking practices related to mortgage servicing and the initiation and handling of foreclosure proceedings."   Stipulation (Dkt. 3-6).   On April 13, 2011, Wells Fargo stipulated to the entry of a consent order against it, id., which is a final order issued pursuant to 12 U.S.C. § 1818(b).   Consent Order at Art. XIII § 8 (Dkt. 3-7).   The Consent Order requires Wells Fargo, in part, to "submit to the Deputy Comptroller and the Examiner-in-Charge a plan, acceptable to the OCC, to remediate all financial injury to borrowers caused by any errors, misrepresentations, or other deficiencies . . . ."   Id. at Art. VII § 5 It also provides that it creates no rights for third-parties:

> Nothing in the Stipulation and Consent or this Order, express or implied, shall give to any person or entity, other than the parties hereto, and their successors hereunder, any benefit or any legal or equitable right, remedy or claim under this Stipulation or the Consent Order.

Id. at Art. XIII § 10.

On February 28, 2013, the Consent Order was amended, with Wells Fargo's consent, to provide for a loss mitigation program:

> (1)     By no later than January 7, 2015, the Bank shall provide loss mitigation or other foreclosure prevention actions . . . in the amount of $1,225,317,650.00.
> . . . .

2

(2)    Well structured loss mitigation actions should focus on foreclosure prevention, which should typically result in benefitting the borrower.  While the Bank's actions may be affected by existing investor requirements, the Bank's foreclosure prevention actions should reflect the following guiding principles:

(a)    preference should be given to activities designed to keep the borrower in the home;
(b)    foreclosure prevention actions should emphasize affordable, sustainable, and meaningful home preservation actions for qualified borrowers;
(c)    foreclosure prevention actions should otherwise provide significant and meaningful relief or assistance to qualified borrowers; and
(d)    foreclosure prevention actions should not disfavor a specific geography within or among states, nor disfavor low and/or moderate income borrowers, and not discriminate against any protected class of borrowers.

Amended Consent Order at Art. IV §§ 1, 2 (Dkt. 3-8).

Like the original order, the Amended Consent Order stated that that no third-party rights were being created:

Nothing in the Stipulation or this Amendment to the Consent Order, express or implied, shall give to any person or entity, other than the parties hereto, and their successors hereunder, any benefit or any legal or equitable right, remedy or claim under the Stipulation or this Amendment to the Consent Order.

Id. at Art. VII § 8.

On November 19, 2012, Plaintiffs received a letter from the Independent Foreclosure Review Administrator, the entity performing the foreclosure review process established by the OCC Consent Orders, confirming receipt of Plaintiffs' request for review of the foreclosure process relative to their property.  11/19/2012 Letter (Dkt. 7-2).  The Independent Foreclosure Review process, monitored by federal bank regulators, was made available to borrowers through the OCC Consent Orders.  Id.  Plaintiffs subsequently received a message from the Independent Foreclosure Review firm stating that they were eligible for compensation related to "an

3

enforcement action regarding deficiencies in the mortgage servicing and foreclosure processes of Wells Fargo."  Payment Message (Dkt. 7-3).  On April 26, 2013, Plaintiffs received a check from the Independent Foreclosure Review firm for $500, and a letter stating that the payment amount was final.  Check (Dkt. 7-4).

Plaintiffs filed their complaint in Michigan's Wayne County Circuit Court on May 31, 2013.  Compl. (Dkt. 1).  Although the complaint is not a model of clarity, Plaintiffs appear to seek declaratory relief related to the Consent Orders and an order enjoining eviction, as well as an equitable accounting of the effects on Plaintiffs' mortgage loan of the Consent Orders.  Id. On June 20, 2013, the circuit court entered a temporary restraining order enjoining Defendants from proceeding with eviction.  Dkt. 1 at 437-438 (CM/ECF pagination).  On July 1, 2013, Defendants removed the action to this Court (Dkt. 1), and on July 8, 2013, Defendants filed their motion to dismiss (Dkt. 3).

### III.    LEGAL STANDARD

#### A.  Federal Rule of Civil Procedure 12(b)(1)

In a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction.  Moir v. Greater Cleveland Regional Transit Auth., 895 F.2d 266, 269 (6th Cir. 1990).  "Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks."  United States v. Ritchie, 15 F.3d 592, 598 (6th Cir. 1994).  On a motion raising a facial attack, "the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party."  Id.  A factual attack challenges "the factual existence of subject matter jurisdiction," and the Court, on reviewing a motion raising a factual attack, "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the

4

case." Id. Defendants' motion, which does not challenge the factual basis of the complaint, raises a facial attack. See Def. Br. at 5-6 (Dkt. 3) (citing Martinez v. Dep't of Homeland Security, 502 F. Supp. 2d 631, 634 (E.D. Mich. 2007) for the proposition that a "Rule 12(b)(1) motion must be granted if, 'taking as true all facts alleged by the plaintiff, the court is without subject matter jurisdiction to hear the claim.'").

**B. Federal Rule of Civil Procedure 12(b)(6)**

In analyzing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Supreme Court has stated, "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Therefore, to survive a motion to dismiss: (i) the complaint must plead sufficient specific factual allegations, and not just legal conclusions, in support of each claim, id.; and (ii) if all well-pled factual allegations are accepted as true, the complaint must state a "plausible claim for relief." Id.

In ruling on a motion to dismiss, a court may consider the entire complaint, documents incorporated by reference in the complaint and central to the claims, and matters on which a court may take judicial notice. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007). Materials that a court may consider on a Rule 12(b)(6) motion include public records. Ashland, Inc. v. Oppenheimer & Co., Inc., 648 F.3d 461, 467 (6th Cir. 2011) ("In addition to the allegations in the complaint, [the Court] may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice." (citation omitted)).

5

# IV.    ANALYSIS

Defendants are entitled to dismissal of the complaint, for four reasons: (i) the governing statute, 12 U.S.C. § 1818(i), divests district courts of jurisdiction to review or affect an OCC Consent Order; (ii) the language of the Consent Orders establish that the orders do not confer on any third party a legal or equitable right, remedy, or claim; (iii) Plaintiffs have not presented sufficient grounds to maintain a challenge to the foreclosure sale after the expiration of the redemption period; and (iv) Plaintiffs seek an injunctive remedy without first identifying a legally cognizable wrong.

## A.  Lack of Jurisdiction

The Court begins with the issue of jurisdiction, because "[s]ubject matter jurisdiction is always a threshold determination." American Telecom Co., LLC v. Republic of Lebanon, 501 F.3d 534, 537 (6th Cir. 2007) (citation omitted).   Plaintiffs have the burden of showing that the Court has jurisdiction over their claims.  See Moir, 895 F.2d at 269.  The Court concludes that Plaintiffs have not met this burden.  Instead, because the governing statute, 12 U.S.C. § 1818(i)(1), divests the Court of jurisdiction to affect the enforcement of the Consent Orders, and because Plaintiffs request an order requiring and monitoring Defendants' compliance with the Orders, the Court lacks jurisdiction to grant the relief Plaintiffs seek.

Defendants argue that the Court does not have jurisdiction to enforce the OCC Consent Orders, on the grounds that Congress has expressly withdrawn that power from the federal courts except through direct enforcement actions brought by the OCC.  See Def. Br. at 7-10 (Dkt. 3).  In response, Plaintiffs argue that their request for an injunction against eviction does not affect the enforcement of the Consent Orders, and that Plaintiffs only seek to preserve the status quo during

6

the time it takes Defendant Wells Fargo to fulfill the terms of the Consent Orders.  Pl. Resp. at 1-2 (Dkt. 7).

Plaintiffs further argue that the Court has jurisdiction over this matter because the Consent Orders create procedural due process implications.  Id. at 3-4.  Plaintiffs argue that because they are in the "In-Scope Borrower Population" contemplated by the Consent Orders, and because they received communications from the regulators' agency stating that they may be eligible for foreclosure prevention assistance, Plaintiffs have a legitimate expectation of inclusion in activities designed to keep them in their home.  Id. at 4.

In light of these arguments, the Court turns to applicable law.  The Consent Orders are final orders issued pursuant to 12 U.S.C. § 1818 (b).  The enforcement provision of § 1818 provides, in pertinent part:

> [E]xcept as otherwise provided in this section or under section 1831o or 1831p–1 of this title no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under any such section, or to review, modify, suspend, terminate, or set aside any such notice or order.

12 U.S.C. § 1818(i)(1).  The Supreme Court has concluded that this provision "provides . . . clear and convincing evidence that Congress intended to deny the District Court jurisdiction to review and enjoin the Board's ongoing administrative proceedings [including Board notices or orders]."  Bd. of Governors of the Fed. Reserve Sys. v. MCorp Fin., Inc., 502 U.S. 32, 44 (1991).  See also Rex v. Chase Home Fin. LLC, 905 F. Supp. 2d 1111, 1126 (C.D. Cal. 2012) ("[T]he primary purpose of Section 1818 is to prevent federal courts from usurping the OCC's power to enforce its own consent orders against parties to the orders." (citations omitted) (emphasis in original)).

Applicable precedent reveals a distinction between cases in which the relief sought by the plaintiff was already addressed by the Consent Order, resulting in the district court being

divested of jurisdiction over the matter, and cases in which the Consent Order is silent as to the relief sought by the plaintiff, resulting the district court's retention of jurisdiction.  In <u>Bakenie v. JPMorgan Chase Bank, N.A.</u>, No. 12-60, 2012 WL 4125890, at *1 (C.D. Cal. Aug. 6, 2012), the plaintiffs brought claims against Chase Bank under California law, asserting that Chase Bank operated using a number of improper notarial and recording processes.  The plaintiff sought declaratory and injunctive relief to restrain these practices.  The court concluded that because the OCC Consent Order explicitly addressed these same practices of Chase Bank, and because granting Plaintiff the relief sought would impinge on the detailed plan developed by Chase Bank and the OCC for correcting these practices, the relief sought by Plaintiff would affect enforcement of the Consent Order.  <u>Id.</u> at *3.  The court concluded, "Given Congress's 'far-reaching' withdrawal of jurisdiction over consent orders, the Court finds that it does not have subject matter jurisidiction over Plaintiffs' claim."  <u>Id.</u>

However, courts have determined that where the OCC Consent Order is silent as to the relief sought by the plaintiff, the court is not divested of jurisdiction over the plaintiff's claims.  <u>See</u>, <u>e.g.</u>, <u>Rex</u>, 905 F. Supp. 2d at 1128-1129 (concluding that the court had jurisdiction over the plaintiff's claims, because the plaintiff's request for injunctive relief and damages regarding short sale communications and deceptive representations did not affect or modify the Consent Order's requirement that the defendant develop a plan to ensure accurate communication and reimburse borrowers).

In light of this precedent, the question is whether the relief sought by Plaintiffs is already addressed or provided for in the Consent Orders.  If so, the Court lacks jurisdiction over the claims.  If, however, the Consent Orders are silent as to the relief sought, then the Court may have jurisdiction over the claims.

Although the parties have not presented any cases directly on point to the present matter, the Court concludes that the relief sought by Plaintiffs is already directly addressed in the Consent Orders.  Plaintiffs seek a stay of eviction until the Court determines that Wells Fargo develops loss mitigation actions in compliance with the Consent Orders.  And loss mitigation is what is mandated by the Consent Orders.  This is not a situation where the plaintiff is bringing separate claims, such as breach of contract or promissory estoppel, related to a foreclosure; in this case, Plaintiffs premise their relief entirely on the Consent Orders.  Title 12 U.S.C. § 1818(i) prohibits the Court from exercising jurisdiction over these claims.

Plaintiffs' chief argument regarding jurisdiction is that the Consent Orders create a protectible property interest, for which the Court has jurisdiction to ensure Plaintiffs receive procedural due process.  In support of this argument, Plaintiffs rely on Goldberg v. Kelly, 397 U.S. 254, 262-264 (1970),where the Supreme Court  concluded that government welfare benefits "are a matter of statutory entitlement for persons qualified to receive them," id. at 262, for which the Constitution mandated a pre-termination hearing.

However, Goldberg is inapposite to our case for two reasons: (i) Plaintiffs have not shown any entitlement to any claimed property benefit; and (ii) Plaintiffs have not established that any deprivation of property was the result of a government action.

Procedural due process requires that the government "provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest."  Warren v. City of Athens, Ohio, 411 F.3d 697, 708 (6th Cir. 2005) (citation omitted).  In the due process context, property interests are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those

benefits." Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). In Goldberg, the property right – entitlement to government welfare benefits – arose for parties qualified under the statute to receive the benefits.

However, in the instant case, Plaintiffs have not shown any entitlement to the property or benefit that they seek: remaining in their home pursuant to the Consent Orders. Plaintiffs have not demonstrated that anything in the Consent Orders would mandate that they be allowed to remain in their home after the foreclosure. Notably, the Consent Orders mandate a general program, but there is no showing by Plaintiffs that they would likely benefit from it. Their claim that the foreclosure prevention actions under the Consent Order would "likely" result in cancelling the Sheriff's Deed of Sale is wholly speculative and unsupported. See also Benjamin v. Jacobson, 172 F.3d 144, 164 (2d Cir. 1999) ("[T]he provisions of a consent decree that order prospective relief remain subject to modification or alteration for changes in law or circumstances. Such right as a litigant may have to prospective relief is thus neither final nor 'vested' in the constitutional sense.").

The second problem with Plaintiffs' due process argument is that Plaintiffs have not shown that any deprivation of property – presumably, Plaintiffs' eviction from their house – would be a government action. Foreclosure proceedings occur between private parties as a result of a contractual relationship. Northrip v. Fed. Nat. Mortg. Ass'n, 527 F.2d 23, 28-29 (6th Cir. 1975). The government is not the entity who would be evicting Plaintiffs.

Furthermore, the existence of the Consent Order does not create state action in the eviction proceedings. As the Supreme Court has explained, "Over a century ago this Court recognized the principle that the due process provision of the Fifth Amendment does not apply to

the indirect adverse effects of governmental action."  <u>O'Bannon v. Town Ct. Nursing Ctr.</u>, 447

U.S. 773, 789 (1980).  The procedural due process argument lacks merit.

### B.  No Third-Party Right to Enforce the Consent Orders

As an independent basis for dismissal, Defendants argue that the language of the

Amended Consent Order provides that it does not establish a private cause of action for third

parties to enforce the Order.  Def. Br. at 11.   The Court agrees.

As a general matter, "[a] consent decree is not enforceable directly or in collateral

proceedings by those who are not parties to it."  <u>Vogel v. City of Cincinnati</u>, 959 F.2d 594, 598

(6th Cir. 1992) (citation and quotation marks omitted).   Furthermore, the Amended Consent

Order provides,

> Nothing in the Stipulation or this Amendment to the Consent
> Order, express or implied, shall give to any person or entity, other
> than the parties hereto, and their successors hereunder, any benefit
> or any legal or equitable right, remedy or claim under the
> Stipulation or this Amendment to the Consent Order.

<u>Id.</u> at Art. VII § 8.  This language, on its face, makes clear that third parties, such as Plaintiffs, do

not have the right to seek legal relief or remedies premised on the Consent Orders.

The Sixth Circuit, in analyzing an OCC Consent Order with Bank of America containing

similar language to the instant Orders, held that the plaintiff lacked the right to enforce the

Consent Orders:

> As an initial matter, Plaintiff has no right to enforce the terms and
> conditions of the OCC Consent Orders.   Each specifically
> provides, "Nothing in the Stipulation and Consent or this Order,
> express or implied, shall give to any person or entity, other than the
> parties hereto . . . any benefit or any legal or equitable right,
> remedy or claim under the Stipulation and Consent or this Order."
> ECF 27, Bank of America Consent Order, Exh. B, Art. XIII (10);
> MERSCORP Consent Order, Exh. C, Art. XIII (8). Courts in this
> circuit have specifically held that a consent order is a contract that
> non-parties are not entitled to enforce. <u>See, e.g.,</u> <u>Hart   v.</u>

11

> Countrywide Home Loans, Inc., 735 F.Supp.2d 741, 748 (E.D.Mich. 2010) (borrower cannot assert a claim based on lender's failure to comply with a Michigan attorney general consent agreement because borrower is a non-party) (citing Rosen v. Tenn. Comm'r of Fin. & Admin., 288 F.3d 918, 930 (6th Cir. 2002)).

Green v. Bank of Am., 530 F. App'x 426, 430 (6th Cir. 2013). See also Onyszcsak v. Wells Fargo Bank, N.A., No. 13-12166, 2013 WL 6038863, at *5 (E.D. Mich. Nov. 14, 2013) (concluding that the language of the OCC Consent Order "clearly establishes Plaintiffs have no right to enforce the Consent Order against Defendant" by suing the defendant for violation of the Consent Orders).

Plaintiffs offer no cogent response to these authorities. Instead, they argue that Defendants' position would create "a backward incentive" to evict Plaintiffs when they might be beneficiaries under the loss mitigation program. Pl. Br. at 11. However, a long line of precedent attests that district courts are not free to override the principle that consent orders are designed to be enforced by the administrative agencies that secure them, not an amorphous public filing of suits in innumerable courts across the country. See, e.g., McCorp, 502 U.S. at 44 (concluding that § 1818(i)(1) "provides . . . clear and convincing evidence that Congress intended to deny the District Court jurisdiction to review and enjoin the Board's ongoing administrative proceedings."); DeNaples v. Office of Comptroller of Currency, 404 F. App'x 609, 612 (3d Cir. 2010) ("The congressional framework enacted in § 1818 is intended to allow agencies to conduct formal reviews without interference from the federal courts." (citing 12 U.S.C. § 1818(i)(1)); In re JPMorgan Chase Mortg. Modification Litig., 880 F. Supp. 2d 220, 231 (D. Mass. 2012) ("[T]he primary purpose of [§ 1818(i)(1)] is to prevent federal courts from usurping the OCC's power to enforce its own consent orders against parties to the orders." (emphasis in original)). These authorities are consistent with the view that confining enforcement to the operative agency

assures uniformity of interpretation and avoids burdening the Nation's courts with multifarious actions.

For these reasons, the Court concludes that Plaintiffs lack the right to seek a stay of eviction pending Wells Fargo's actions pursuant to the Consent Orders.

**C. Challenge to the Foreclosure Sale After Expiration of the Redemption Period**

As explained below, the Court concludes that Plaintiffs, who have presented no allegations of fraud or irregularity in the foreclosure process, have not made a sufficient showing to challenge the foreclosure sale. To the extent Plaintiffs seek to set aside the foreclosure (the briefing and the complaint are inconsistent as to whether Plaintiffs do, in fact, seek this relief), Plaintiffs' challenge to the foreclosure lacks merit.

Defendants argue that Plaintiffs lack standing to challenge the foreclosure sale because the statutory redemption period has expired. Def. Br. at 11. Defendants contend that Plaintiffs have no legal or equitable interest in the property. Id. at 12-13. In response, Plaintiffs argue that they are not challenging the foreclosure proceedings. Pl. Resp. at 1 (Dkt. 7).

The Court initially notes that although Defendants phrase their argument as a standing issue, a recent line of authority, including decisions from the Sixth Circuit, has concluded that a challenge to a foreclosure after expiration of the redemption period "do[es] not turn on the standing doctrine." El-Seblani v. IndyMac Mortg. Servs., 510 F. App'x 425, 429 (6th Cir. 2013) (citations omitted). It is true that the after the expiration of the statutory redemption period, a party may only maintain an action challenging a foreclosure upon "a clear showing of fraud or irregularity." Conlin v. Mortg. Elec. Registration Sys., Inc., 714 F.3d 355, 359 (6th Cir. 2013). See also El-Seblani, 510 F. App'x at 428-429 (noting that Michigan courts allow "an equitable extension of the period to redeem from a statutory foreclosure sale in connection with a

mortgage foreclosed by advertisement and posting of notice in order to keep a plaintiff's suit viable, provided he makes a clear showing of fraud or irregularity by the defendant." (citations and quotation marks omitted))  However, as this Court stated in its Opinion and Order in Etts v. Deutsche Bank Nat. Trust Co., No. 13-11588, 2014 WL 645358, at *5 (E.D. Mich. Feb. 19, 2014), "[E]xpiration of the redemption period does not necessarily bar standing.  Rather, as the Sixth Circuit has explained, 'It is more accurate to say that [the claims at issue] lacked sufficient merit to meet the high standard imposed by Michigan law on claims to set aside a foreclosure sale.'" (citing El-Seblani, 510 F. App'x at 429)).

The question before the Court is, therefore, whether Plaintiffs have made a sufficient showing of fraud or irregularity to maintain their challenge to the foreclosure.  The Court concludes that Plaintiffs have not met this burden.  Plaintiffs do not point to any fraud or irregularity in the foreclosure process; indeed, Plaintiffs do not claim that any element of the mortgage signing, loan servicing, or foreclosure process was in any way defective.  Thus, to the extent Plaintiffs do seek to quiet title and set aside the foreclosure, Plaintiffs have not made a sufficient showing of fraud or irregularity to seek such relief.[1]

## V.     CONCLUSION

For the reasons stated above, the Court grants the motion to dismiss (Dkt. 3).

---

[1] There is an additional reason, not directly addressed by the parties, that Plaintiffs are not entitled to the injunctive relief they seek.  Simply put, Plaintiffs have not identified an underlying claimed wrong, defect in the foreclosure process, or any other cause of action; their claim for relief is premised entirely on speculative foreclosure loss mitigation actions that may be undertaken by Wells Fargo.  However, an injunction is an equitable remedy that must be tied to an underlying claim.  See Wiggins v. Argent Mortg. Co., LLC, 945 F. Supp. 2d 817, 824-825 (E.D. Mich. 2013).  Although Plaintiffs request an equitable remedy, they have not identified a legally cognizable wrong.  It is for this reason that Plaintiffs' reliance on Marbury v. Madison, 5 U.S. 137 (1803), is misplaced.  Marbury may stand for the "just principle that there should be a remedy for every wrong," Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30, 54 (1994) (Stevens, J., concurring), but in this case Plaintiffs have not identified a wrong.  Plaintiffs' arguments invoke Marbury out of context and do not present a basis for relief.

SO ORDERED.

Dated:  March 13, 2014                              s/Mark A. Goldsmith
        Flint, Michigan                             MARK A. GOLDSMITH
                                                    United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 13, 2014.

                                                    s/Deborah J. Goltz
                                                    DEBORAH J. GOLTZ
                                                    Case Manager